[No. 12506.  Department One.  March 2, 1915.]

THE STATE OF WASHINGTON, *Respondent*, v. FRED C. MOORE, *alias E. Lovelock, Appellant.*[1]

CRIMINAL LAW—EVIDENCE—OTHER CRIMES. In a prosecution for grand larceny by false pretenses in that accused procured a bill of sale of certain property by giving in exchange a deed to lots he did not own and a check on a bank where he had no funds, evidence that the bill of sale was altered after execution so as to include additional property is inadmissible, under the rule forbidding the admission of evidence of other crimes than the one charged in the information.

FALSE PRETENSES—DEFENSES—MISTAKE — EVIDENCE — ADMISSIBILITY. In a prosecution for grand larceny by false pretenses in giving a check on a bank where he had no funds, which defendant had claimed was a mistake and had at the time offered to give a check on a bank in which he had a deposit, his bank account book showing a balance in his favor in the latter bank is admissible in evidence for the purpose of showing his claim of good faith in the transaction, and his ability to substitute a good check for the one drawn against no funds.

Appeal from a judgment of the superior court for King county, Ronald, J., entered December 13, 1913, upon a trial and conviction of grand larceny. Reversed.

*E. H. Chavelle* and *A. A. Booth*, for appellant.

*John F. Murphy* and *Crawford E. White*, for respondent.

MORRIS, C. J.—Appellant was convicted under an information charging grand larceny by false pretenses. The only errors alleged to which we will refer are in the admission and rejection of testimony.

The complaining witness was the owner of a concrete mixer and other like equipment which he advertised for sale. The appellant, answering the advertisement, offered in exchange real property and cash. A meeting was arranged, and appellant showed Brady, the complaining witness, two lots in

[1]Reported in 146 Pac. 627.

Hazelwood addition to Seattle, which Brady agreed to accept, with $200 in cash. There is a dispute as to the lots shown; Brady claiming that he was shown lots six and seven in block eight, while appellant contends he was shown lots six and seven in block nine. Brady agreed to accept the two lots and $200 cash in exchange for his property, and with appellant went to the city hall to examine a map to ascertain the correct description of the lots. Appellant asserts that while he was certain as to the lots being numbered six and seven, he was not clear as to the block number. Arriving at the city hall, Brady examined a city map and satisfied himself that the lots shown him were six and seven in block seven, and so dictated the description to the appellant, who thereupon wrote a deed so describing them. A trip was then made to Auburn, where Brady's property was stored. The parties then returned to Seattle, where appellant stepped into a bank, procured a blank counter check, and drew a check upon the American Savings Bank & Trust Company for $200, signing it "Rainier Contracting Co., per E. Lovelock." A bill of sale was then given appellant for the mixer and other property.

These transactions occurred late in the afternoon of March 5th. The bill of sale and deed were dated March 6th and the check March 8th. On March 6th, Brady presented his check for payment at the bank upon which it was drawn, and payment was refused on account of no funds. The next day Brady met appellant and informed him that the bank had refused payment on the check, and that he had learned that appellant had no title to lots six and seven, in block seven, of Hazelwood addition. Appellant, when shown the check, claimed he had made a mistake in the bank, and offered Brady a check on the Scandinavian-American Bank, where he had made a deposit of $200 on March 6th. He also offered to give a new deed correctly describing the lots he claimed to own. After some parleying, in which each party made demands upon the other for a money consideration to "call

the deal off," Brady went to the office of the prosecuting attorney and entered a complaint, upon which this action was instituted.

We find one error in the record which demands a reversal. The state produced the notary public before whom the bill of sale was executed, and, over appellant's objection, the witness was permitted to testify that additional property had been included in the bill of sale subsequent to its execution. This was a plain violation of the well known rule that evidence of other crimes than the one charged in the information is not admissible, save in certain well recognized exceptions not here present. The lower court recognized this rule and applied it when the state subsequently offered a handwriting expert to prove its theory of subsequent changes in the bill of sale, and referred to the ruling in the admission of this testimony as "dangerous ground." No attempt, however, was made to correct the previous error, and there is no alternative but to hold that it is fatal to the judgment.

As a new trial is to be had, we will notice one other alleged error. Appellant offered in evidence a savings bank account book of the Scandinavian-American bank showing a balance in his favor on March 6th of $1,500, for the purpose of showing his claim of good faith in the transaction, and his ability to draw a good check when he made the offer to substitute a check on this bank for the one drawn on the bank which had refused payment of the first check. The offer was denied. We think this evidence should have been admitted, as it might have been accepted by the jury as some evidence at least of appellant's claim of good faith and lack of criminal intent in the transaction, its value for such purpose being for the jury.

The judgment is reversed and a new trial ordered.

Mount, Parker, Holcomb, and Chadwick, JJ., concur.